United States District Court
Southern District of Texas
**ENTERED**
March 06, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BLANCA IRIS ANTUNEZ HERNANDEZ, *et al.*, Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00453 |
| UR M. JADDOU, Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Ur M. Jaddou's Motion to Dismiss (Dkt. 14). After careful consideration of the motion, the response, the reply, the notice of supplemental authority, and the response to the notice of supplemental authority, the Court **GRANTS** Defendant's motion (Dkt. 14) and **DISMISSES** the case.

## I. BACKGROUND

### A. U-Visa Applications

The Immigration and Nationality Act ("INA") governs the admission of noncitizens into the United States. 8 U.S.C. § 1101 *et seq*. Under the INA, the U.S. Department of Homeland Security is authorized to issue U Visa status to noncitizen victims of qualifying crimes who cooperate with law enforcement. 8 U.S.C. § 1101(a)(15)(U). The number of U Visas that can be granted each year is statutorily capped at 10,000. 8 U.S.C. § 1184(p)(2)(A)-(B). To address this limitation, the agency responsible for

adjudicating Visa applications—United States Citizenship and Immigration Services ("USCIS")—manages a waiting list. 8 C.F.R. § 214.14(d)(2).

Individuals with pending applications for U Visas may receive work authorizations via one of two distinct tracks: either by the Bona Fide Determination ("BFD") track or the waitlist track. 8 C.F.R. § 214.14(d)(2).; *see Barrios Garcia v. U.S. Dep't of Homeland Security*, 25 F.4th 430, 438-39 (6th Cir. 2022). The BFD policy was implemented by the Secretary of Homeland Security (the "Secretary") pursuant to the Secretary's authority under the INA. 8 U.S.C. § 1184(p)(6); *see D'Cruz v. United States Citizenship & Immigr. Servs.*, Civil Action No. H-24-340, 2024 U.S. Dist. LEXIS 191725, at *2 (S.D. Tex. Oct. 9, 2024) ("[T]he BFD Policy [] amounts to a 'practical application' of the Secretary's discretionary authority granted under INA Section 1184(p)(6) to cope with the large numbers of U-Visa applications that exceed the annual statutory cap of 10,000.") (citing *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024)). Under the BFD policy, the USCIS may grant employment authorization documents ("EAD") to those petitioners whose applications it finds to be bona fide. 8 U.S.C. § 1184(p)(6). Additionally, the USCIS may grant bona fide applicants deferred action from removal—essentially, permission to remain lawfully in the United States pending the issuance of a U Visa. 8 C.F.R. § 274a.12(c)(14).

If an applicant receives a favorable BFD, USCIS does not place the applicant on the waitlist. USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited February 26, 2025) (hereinafter, "Policy Manual"); *see also id*. at Vol. 3, Part C, Ch. 5, Appendix: Bona Fide Determination Process

Flowchart, https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf (last visited February 26, 2025). Alternatively, if an applicant does not receive a favorable BFD, USCIS will then determine whether the petitioner is eligible for the waitlist—if so, USCIS decides whether to grant them work authorization. *Id*. Those applicants on the waitlist cannot be switched over to the BFD track, and applicants on both tracks still await the ultimate adjudication of their U-Visa application. *Id*.

**B. The Administrative Procedure Act and 8 U.S.C. 1252(a)(2)(B)(ii)**

Under the Administrative Procedure Act ("APA"), the Court has jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, this jurisdiction extends only to the unreasonable delay of discrete actions the agency is *required* to take. 8 U.S.C. § 1252(a)(2)(B)(ii); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required to take*[.]") (emphasis in original); *Fort Bend Cnty. v. United States Army Corps of Engineers*, 59 F.4th 180, 197 (5th Cir. 2023) ("The second requirement under section 706(1) is that the plaintiff identify discrete agency action the agency is *legally required* to take.") (emphasis in original). The Court lacks jurisdiction to review any "decision or action" that is "in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

**C. Plaintiffs' Claims**

Plaintiffs are victims of serious crimes who have assisted law enforcement in the investigation and prosecution of criminal offenses. (Dkt. 18 at p. 6). Each of the eighty-nine Plaintiffs have applied for a U Visa and are waiting for the adjudication of their application. *Id*. Plaintiffs seek to have USCIS make a BFD on their applications, issue those who are determined to be bona fide applicants deferred action, and decide whether such applicants should receive EADs. *Id*. Alternatively, Plaintiffs seek to have USCIS adjudicate their eligibility for the waitlist and issue Plaintiffs the appropriate interim benefits thereafter. *Id*.

Plaintiffs bring claims against Defendant Ur M. Jaddou ("Jaddou") in her official capacity as the Director of USCIS. (Dkt. 1 at p. 38). Plaintiffs allege that Jaddou unlawfully delayed the determinations of: (1) whether to grant Plaintiffs a favorable BFD; (2) whether to grant Plaintiffs deferred action; and (3) whether to grant Plaintiffs EADs. (*Id*. at pp. 49 – 52). Plaintiffs allege each of these delays violate 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(A), 8 U.S.C. § 1184(p), the Policy Manual, and the Due Process Clause of the Fifth Amendment to the Constitution. *Id*. Plaintiffs pursue a declaratory judgment to that effect and injunctive relief. *Id*.

Jaddou argues that Plaintiffs claims should be dismissed on three separate grounds: first, that Plaintiffs fail to demonstrate Article III standing; second, that judicial review of Plaintiffs' challenge is barred by statute; and, third, that Plaintiffs cannot show that joinder of their claims satisfy the standards of Federal Rule of Civil Procedure 20. (Dkt. 14 at pp.

12- 13). The Court agrees with Jaddou on the first two grounds and therefore does not reach her argument as to joinder under Rule 20.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a federal court's subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). Courts may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party asserting that federal subject-matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

## III. ANALYSIS

The Court finds that Plaintiffs do not satisfy Article III standing because their alleged injury is not redressable by a favorable ruling by the Court. Still, even if Plaintiffs could demonstrate standing, the Court does not have subject-matter jurisdiction over their claims as judicial review of the alleged delay is barred by statute. *See*

8 U.S.C. § 1252(a)(2)(B)(ii). Accordingly, the Court holds that this lawsuit must be dismissed.

**A. Article III Standing**

The Court finds that Plaintiffs do not have standing to bring this lawsuit under Article III of the U.S. Constitution. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that [the plaintiff] . . . must establish that [he or she has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To have standing to sue, the plaintiff must demonstrate injury in fact that is fairly traceable to the defendant's conduct and that would be redressed by a favorable judicial decision." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Lujan*, 504 U.S. at 561. To survive a motion to dismiss under Rule 12(b)(1) based on a lack of Article III standing, Plaintiffs must establish: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (internal quotations omitted). The Court finds that Plaintiffs have failed to do so.

It is beyond dispute that Plaintiffs' alleged injury is traceable to the USCIS as the agency authorized to adjudicate Plaintiffs' U-Visa applications. As such, Plaintiffs' Article

III standing hinges on whether they can claim an injury in fact and, if so, whether this injury can be redressed by a favorable decision of this Court. The Court holds that, regardless of whether the alleged injury supports Article III standing,[1] Plaintiffs fail to demonstrate that such injury could be redressed by a favorable ruling.

"To satisfy redressability, a plaintiff must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)) (emphasis in original). A plaintiff "satisfies the redressability requirement when [he or she] shows that a favorable decision will relieve a discrete injury to [his or her]self." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

[1] The Court notes that the Fifth Circuit has recognized that the "loss of a non-illusory opportunity to pursue a benefit constitutes injury in fact." *Ecosystem Inv., Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 292 (5th Cir. 2018). Further, "a plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit … even though the plaintiff may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity." *Id.* (quoting *Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015)) (alteration in original). While the Fifth Circuit has neither condoned nor foreclosed applying this premise to immigration benefits, many other courts have found an injury in fact where similar or the same benefits are denied. *See Patel v. United States Citizenship & Immigration Servs.*, 732 F.3d 633, 638 (6th Cir. 2013) (holding that the "lost opportunity is itself a concrete injury" where plaintiff challenged the denial of his petition for an employment visa as arbitrary and capricious); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (holding that the lost opportunity is "itself a concrete injury" where plaintiff's petition for a green card was revoked); *Shalom Pentecostal Church v. Acting Sec'y, United States Dep't of Homeland Sec.*, 783 F.3d 156, 162 (3d Cir. 2015) (finding that, when an alien's visa petition is denied, the lost opportunity to receive an immigrant visa is a concrete injury); *Abboud v. INS*, 140 F.3d 843, 847 (9th Cir. 1998) (finding a concrete injury where a Relative Petition's beneficiary lost a significant opportunity to receive a visa upon denial of the petition). Regardless, the Court need not reach a conclusion on this matter as Plaintiffs fail to satisfy Article III standing on other grounds.

Plaintiffs request that the Court declare USCIS's delay illegal and enjoin Jaddou to make various determinations. Jaddou argues that "Plaintiffs fail to proffer any showing that an order compelling USCIS to conduct BFDs would necessarily result in USCIS's issuance of EADs or deferred action, and thereby redress Plaintiffs' alleged injury."[2] (Dkt. 22 at p. 15). The Court agrees.

"Standing is not inherently precluded when it is based on the discretionary choice of a third-party, but 'it becomes the burden of the plaintiff to adduce facts showing that those choices … will be made in such manner as to … permit redressability of injury.'" *El Paso Cty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (quoting *Lujan*, 504 U.S. at 562). Plaintiffs argue that they "have suffered and will continue to suffer irreparable harm" as a result of Jaddou's alleged violations because the USCIS's delay has deprived Plaintiffs "of protection against arrest and removal and the ability to work." (Dkt. 1 at p. 49). However, Plaintiffs do not allege that, if the Court were to enjoin USCIS to make the desired determinations, then Plaintiffs would likely be granted favorable BFDs, EADs, deferred action, or even waitlist status—and therefore be protected against removal and be able to work. Accordingly, the Court finds that Plaintiffs have failed to plead that their injuries are redressable by the relief requested. The Court holds that Plaintiffs do not have standing under Article III.

**B. Judicial Review and 8 U.S.C. § 1252(a)(2)(B)(ii)**

[2] Jaddou also argues that Plaintiffs have conceded the redressability argument by failing to address it in their response to Jaddou's motion. (Dkt. 22 at p. 15); *see* (Dkt. 18). In the interest of justice, the Court assesses the merits of the redressability issue, regardless.

The Court finds that—even if Plaintiffs were able to demonstrate standing under Article III—judicial review of their claims is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). This section precludes courts of jurisdiction to review:

> "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

8 U.S.C. § 1252(a)(2)(B)(ii). The Supreme Court has reviewed this jurisdiction-stripping statute in the immigration context, finding section 1252(a)(2)(B)'s scope to be broad. *Patel v. Garland*, 596 U.S. 328, 331 (2022) (holding that the statutory bar on the judicial review of decisions denying discretionary relief in an immigrant removal process extends even to the "review of factual findings that underlie a denial of relief"). "Congress has," in the words of the *Patel* Court, "sharply circumscribed judicial review of the discretionary-relief process." *Id*. at 332.

The Fifth Circuit has since applied this reasoning to a case brought by lawfully present nonimmigrants petitioning for adjustment of their status. *Cheejati*, 106 F.4th at 388. The court reasoned that section 1252(a)(2)(B) "strips federal courts of jurisdiction to review any discretionary decision or action rendered by the Attorney General" and added that *Patel* bars judicial review of all "practical applications of the discretion afforded the Attorney General." *Id*. at 394. Ultimately, the *Cheejati* court reasoned, "there is no evidence in the text of [section 1252(a)(2)(B)] that Congress intended to strip federal courts of jurisdiction as to one type of discretionary conduct, but not as to another." *Id*. at 396.

Just as with the Attorney General in *Cheejati*, "federal law generally proscribes judicial review of any decision or action of the Secretary of Homeland Security which is specified to be in his or her discretion." *Brooks v. Garland*, No. 22-60364, 2023 U.S. App. LEXIS 19976, at *3 (5th Cir. Aug. 2, 2023). The Court finds that the INA specifies that the BFD policy is in the Secretary's discretion. The INA states:

> "[t]he Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title."

8 U.S.C. § 1184(p)(6) (emphasis added).

The "word 'may' customarily connotes discretion," and the Court finds nothing else in the provision that cuts the other way. *Jama v. ICE*, 543 U.S. 335, 346 (2005). As such, this section confers discretionary authority on the Secretary and does not require USCIS to take any action. *See Gonzalez v. Cucinelli*, 985 F.3d 357, 369 (4th Cir. 2021) (Section 1184(p)(6) "mandates nothing[.]"); *D'Cruz*, 2024 U.S. Dist. LEXIS 191725, at *10 (Section 1184(p)(6) "confers discretionary authority on the Secretary of Homeland Security, but mandates or requires the Secretary to do *nothing*[.]"); *E. Carpet House, Inc. v. Dep't of Homeland Sec. ex rel. Chertoff*, 430 F.Supp.2d 672, 675 (S.D. Tex. 2006) ("By including the permissive 'may,' [section 1184(a)(1)] affords the Attorney General discretion" and "therefore falls within the scope of § 1252(a)(2)(B)(ii)'s jurisdiction stripping power.").

Each of the determinations challenged in this lawsuit are steps under the BFD policy implemented by the Secretary through USCIS. *See* Policy Manual. The Court finds that the

challenged actions amount to a practical application of the Secretary's discretionary authority under section 1184(p)(6) and are unreviewable as such. Accordingly, the Court holds that Plaintiffs' claims must be dismissed.

## IV. CONCLUSION

The Court finds that Plaintiffs do not satisfy Article III standing because their alleged injury is not redressable by a favorable ruling by the Court. Further, even if Plaintiffs were able to demonstrate Article III standing, the Court finds that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of Plaintiffs' claims because they challenge discretionary actions. Accordingly, the Court **GRANTS** the Motion to Dismiss under Rule 12(b)(1), and all other pending motions are **DISMISSED as MOOT.** This matter is **DISMISSED,** and final judgment is to follow.

SIGNED at Houston, Texas on March 6, 2025.

George C. Hanks Jr.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE